Thank you and good morning. Before we begin the argued cases, we have four cases that are submitted on the briefs at this time. Those are Daley v. McCoy, Nabus-Smith v. Saul, United States v. Turnquist, and Jimenez v. Progressive Preferred Insurance. And with that we'll hear argument in Bottinelli v. Salazar. May it please the court. Steve Sadie for the petitioners. I hope to reserve four minutes for rebuttal. The Supreme Court has repeatedly made the point that every day of custody has constitutional significance. This case involves the first step acts amendment and clarification of the good time credit statute that credits are earned at 54 days for each year of the term of imprisonment. With the extra seven days per year, the petitioners here would be released weeks earlier than their actual projected or actual release dates. The petitioners are requesting that the court consider the amendments immediately effective in the absence of a clear statement from Congress that this be delayed. Alternatively, the delay unrelated to good time credits, the additional time of custody resulting from the delay would violate due process and equal protection because it's unrelated in any way to the length of the delay here up to 210 days for the risk and needs assessment that has nothing to do with good time credits. The Supreme Court has held that delayed effective date depends on a clear statement and in the text of the first step. Well, the question was what this subsection means. Yes. Right? On the statutory instruction. And whether it refers to the entirety of this subsection or not. Yes. And it seems fairly clear that this subsection doesn't mean a little piece of this subsection, but actually means this subsection. What's wrong with that straightforward reading? What's wrong with the straightforward reading is that this section is used 12 times in Section 102 and each of those times refers to subsection G of 3624. That is the implementation section for the earned credit times which have nothing to do with good time credits. They are similar phrases, but one. Well, they're identical phrases. No. No? Earned time credit is. No, no, I mean this subsection, that phrase. Yes. And each of those 12 times that it's used is referring to this subsection as subsection 12. We are not saying that there is not, that this subsection cannot be viewed in different ways, but what we are saying is that it requires construction to decide which of those constructions is correct. And looking at the basic rules of statutory construction involving context, involving the where the statute is located, but most critically the coupling of this subsection with the risk and needs assessment. It's in the effective date. They're saying it's connected to, the delay is connected to the risk and needs assessment. That only has to do with subsection G. It has nothing to do with the good time credits under subsection B. And therefore, I think that the reasoning also avoids the total illogic of having this thin, thin, thin group of people who just happen to be, have their projected release dates during the time between the time the statute was enacted on the 21st of December and the July 19th, when 210 days finally expires, that those people are serving time that they don't need to serve. There's no rational reason for that. And if we were to conclude that the wording of the section is not ambiguous, and I know you disagree with that, but if we were to conclude that, what difference do the whether it makes good sense or it doesn't, if it were clear, we would have to enforce it, even if it's nonsensical from your perspective. Correct? I think there is a doctrine of statutory construction that this Court has adopted that says that we avoid absurd results in construction. Well, it's not absurd necessarily, just because we think there's a better policy. No, we're not. I do not think that it's a matter of better policy. It's one that has no rational connection. And that gets to the, if the Court were determined that there is no other construction and that there is a clear statement, then we would go to the constitutional question. And in the constitutional question is one of equal protection in due process, where the delay, additional time in custody, could be weeks, could be months of time in rational reason. Even if there was some modicum of delay that would be appropriate, why 210 days? Why connect it to a program that there has been absolutely no connection drawn to the good time credits? It's utterly irrational. Even with the generous rational relation test, there's no reason for that degree. And I would suggest there's no reason for any delay whatsoever. This isn't a surprise to anybody. The Bureau of Prisons from 2013 has been saying, we want this legislation in effect. Now Congress has not been able to get to it yet until finally on December 21st. But it's not like that the executive branch wasn't in charge of the timing. They knew that it was coming. It's the simplest calculation you can think of. Mark Walker, the person who received a order from the judge saying recalculate the good time credits under the First Step Act, if you look at the release date in the inmate locator from Bureau of Prisons, it is the same date, February 7th, as the judge signed the order. It wasn't for release. It was for recalculation. They recalculated it like that. It's the simplest mathematical formula you can think of. And it only applies to people who are facing immediate release. When the Bureau of Prisons is saying, oh, we have 180,000 people, sure, but how many people do you have that are coming up for release within a year of December 21st? Very few. And they have massive ability to make those very simple calculations. And they had plenty of warning because it's their legislation. Council, I just want to understand the practical effect of the argument today. So today is July 8th. Yes, it is. And the Act, and I know you've been pushing this case as best as you can, and we appreciate that. But the Act, I think it's undisputed, if you agree with the government's view of the case, July 19th is when this would all kick in, correct? Yes. So what is the practical effect on the petitioners that you represent between us deciding in your favor between now and July 19th or just July 19th happens? First of all, I think that one of the lessons that we can take from a case called Court v. Crabtree in which the panel of this court determined that the Bureau of Prisons was over-incarcerating, what they did was they ordered the relief on that day with the opinion following about five or six weeks later. And that's the case in 96-36226 and in docket number 17. The court ordered the relief immediately. So some of our clients get immediate relief. Of course, as to these eight, though, how would they be affected? Would there be anyone who would actually be released between now and July 19th? Yes, I believe Pam McGowan would. And of course, all of them would be potential beneficiaries because they would be able to file under 3583E the statute related to modifying terms of supervised release in the interest of justice. And the court has a well-established jurisprudence on that being a potential remedy. A third thing to keep in mind is that in past cases where Bureau of Prisons policies have been declared unlawful by this court, I'm thinking of Davis, Downey, Arrington, Crickin, and Court, the Bureau of Prisons issued an operations memorandum for the Ninth Circuit. And so, for at least those people, there was remedy for beyond just the petitioners. And I know that the court requested a supplemental briefing about mootness and ripeness. I hope that the briefing has answered any questions along those lines. But I'm prepared to address those also. I don't have any questions about that. One other case that the government has been relying on is Navarro, a case involving a delay for the implementation of a retroactive amendment. And as we pointed out in our briefing, that case is completely distinguishable for a number of reasons. That in that case, the Sentencing Commission itself articulated the reasons for why there would be a delay. Why it involved the potential reduction of years of time. It involved the filing of a subsequent motion in the district court. And it would require the district court to apply 3553A factors. None of that is here. This is strictly a complete mathematical computation that happens in very little time. But most distinguishing is the fact that here, the statute includes an affirmative rationale tying it to a completely irrelevant program, the risk and needs assessment system, that is unrelated in any way to the good time. There's been no argument that those are related. And as a result, people are staying in prison for no reason when everybody else, it's a retroactive statute. It applies to everybody in there. It's just this tiny group of people that are being required to serve weeks and months more than any logical statute would require. And unless the court has other questions, I'll reserve the remaining time for rebuttal. Thank you. Good morning. May it please the court. Jared Hager on behalf of the United States. This case raises a basic question of statutory interpretation. The district court got it right, and this court should affirm. The First Step Act uses clear and unambiguous language to delay the both be one of the First Step Act. Those amendments are related, contrary to petitioner's suggestion. They both affect 18 U.S.C. 3624. They both affect pre-release custody and the credit that inmates can earn towards quicker release. Now, that is related in that generic sense, but they're not dependent on one another, are they? That's correct, Your Honor. They're not dependent, but they are related in that generic sense. What's the policy rationale, if any, for delaying the good time credits? There's a couple, and I think the most obvious is an orderly implementation of the statute. Now, in Goslon Peretz, the Supreme Court found that that was an adequate reason for delaying the Sentence Reform Act of 1984, which changed it from But isn't that a lot more complicated than just figuring out the number of days? That was more complicated, but I would push back on the assertion that the only impact to the Bureau of Prisons is correcting an algorithm or a sentence formula. Now, that's a necessary prerequisite, but 18 U.S.C. 3624 includes a host of obligations the federal government has when it releases a prisoner. It's got to coordinate with supervised release. It's got to confirm a prerelease custody location, whether that's a residential reentry center. Have those things changed with this statute? Those obligations haven't changed, but it's increasing the release date of several hundred. I mean, we have on, I spoke to BOP's deputy counsel last week, and there's 3,500 inmates who are due for immediate release on July 19th. So that's an atypical burden that the statute sets. And did Your Honor have another question? Well, your argument is that July 19th is the correct date. So if it were earlier than that, what is the number of people that the record shows would be affected? We don't have that in the record, but... Less than the 3,500, presumably. It would be less than the 3,500. The point being that when an inmate comes up for release, there's a lot of work that goes into actually releasing that prisoner. We don't just show them the door. 18 U.S.C. 3624 D requires an allotment of clothing, of a stipend, of transportation. Sub E requires coordination with supervised release services. Sub C requires coordination and confirmation of a home confinement place. All of these statutory provisions have with them corresponding program statements from the Bureau of Prisons that lays out the burden on the Bureau. And we believe that those are subject to judicial notice. And the record itself is silent as to that burden. But again, under a rational basis or under just canons of statutory interpretation, we believe that your honors can take note of the obligations imposed by statute. But instead of just clarifying this as a generic relation that they're both in 102B1, I want to contrast the amendment in Section 602 of the First Step Act. Now, that's an amendment to the exact same statute, 18 U.S.C. 3624. It's an amendment to Subsection C, which deals with prerelease custody. Now, Congress specifically put that outside of 102B, which means that it's effective immediately. Ghazlan Peretz and Navarro say that when Congress affirmatively chooses certain language in one place of a statute and not in another, that we assume that that's a deliberate choice. Now, I want to make a couple of statements about the other two parts of 102B. Now, these are important parts. 102B1 makes substantive changes to the U.S. Code. 102B2 and B3 make changes that are procedural, are procedural amendments. The first delays the effective date, and the second declares the amendments to be retroactive. What's important here is that these two, Sub 2 and Sub 3, use the exact same language, the amendments made by this subsection. Now, petitioners will argue that the change to the good conduct credit is retroactive. They can't do that if their interpretation of this subsection is accurate. Again, we would read these subsections in pari materia so that they have the same meaning. We also think it's important that Ghazlan Peretz, which petitioners rely on, interpreted the Anti-Drug Abuse Act amendments, Section 1004, interpreted the phrase of this section, and they interpreted it the exact same way the government maintains in this case, that this subsection refers to 1004 and nothing else, not the whole Anti-Drug Abuse Act and not some provision of the U.S. Code. You can find further textual support in the First Step Act in Section 401. Now, that changes the Controlled Substances Act in two ways. And then at the end, it says, the amendments made by this section shall be effective, dot, dot, dot. Now, that's clearly referring to the First Step Act because the amendments made are to two different statutes. And so nowhere in the First Step Act does it use the phrase, this section or this subsection, to refer to the U.S. Code. Now, I want to push back on petitioners' argument that there are 12 instances of this section in 102B that refer to the U.S. Code. Those aren't expressions of the First Step Act. They are quoted provisions of the U.S. Code. And as mentioned in our briefing, of course, that would refer to the U.S. Code because it's a quotation of what the U.S. Code is going to say. Everywhere where the First Step Act uses this section in original text, and it does in Section 611, it does in Section 104, and it does in two places in 102, both sub-2 and sub-3, each one of those places refers to the First Step Act. And so we think the language here is clear that Congress intended to delay the effect of these amendments. Moving to the constitutional argument, if your honors have no other questions on the statutory classifications that don't implicate a fundamental right and don't implicate a suspect classification are entitled to rational basis review, and petitioners concede that rational basis review is the standard that you all will employ today. Under rational basis review, they have to negate every conceivable rationale for the statute in order to prevail, and they have not done that. Petitioner's assertion that it's simply absurd ignores the fact that it's more than just a calculation fix. There's a host of other requirements to actually implement this statute. And we believe that the case law supports that as well. Every time there's been a change to credit calculations, every time there's been an increased release of a prisoner, that has been entitled to a, has been a delayed statute. That's the Sentencing Reform Act and related statutes. One other reason why these amendments are related in a rational reason is that they operate on a continuum of release and the Bureau of Prisons application or computation of a sentence. You have a term of imprisonment. You subtract from that the credit for good conduct that an inmate can earn. You subtract further from that the earned income credit that's created by subsection G in the risk and needs assessment system. These are all on a continuum. And so when petitioners claim that there's absolutely no relation or that it's absurd that these would be delayed together, I think it ignores the fact that this all goes into one big computation puzzle that the Bureau then implements in order to calculate a release date and transfer inmates into pre-release custody, whether that's a reentry center or a supervised release and ultimately a home confinement. Moving to the clarification argument, nothing in petitioner's brief overcome the clear fact of Fitzgerald, which applies better to this case than either ABKCO or the Beverly Community Hospital. Those cases include an express statement of clarification intent and they expressly decide a circuit split in order to settle the law. Fitzgerald disagrees with those cases and says the clarification is actually a substantive change, which is what the First Step Act amendments are. They, in effect, change the state of the law as decided by Barbara V. Thomas. That's what distinguishes this case from ABKCO and from Beverly Community Hospital is that we don't have a circuit split here and we don't have an express clarification. I don't think Congress could even overrule the Supreme Court's interpretation if they wanted to. They had to change the statute and that's what makes it a substantive change, not entitled to immediate implementation. The other basic distinguishing factor is that this case, the First Step Act, includes an express effective date that's in the future. That didn't exist in either the ABKCO opinion or in Beverly Community Hospital. It did exist in the Fitzgerald case, which was interpreting the amendments to the Interstate Land Sales Act. With that, if there are no other questions, I'll conclude my argument. We ask you to affirm the district court. I don't believe we have any further questions. Thank you. I'd like to make five points, Your Honor. First, there's been no showing that any delay is needed and the reason is that, again, the Bureau of Prisons has had total control over when the statute was going forward. They've known when it got through the House. They know when it got through the Senate. There's been plenty of time to do any type of preparation. Remember, the release planning for those who are eligible for pretrial custody, which is less than half, all that starts 30 months before release under the program statement. What we're talking about is a minor tweak of when they start their release programming that has already been prepared. In terms of what we're looking for in terms of a clear statement, there's no clear statement that applies here and there's no rationale that would require it to be tied, especially tied to a system that has nothing to do with good time credits. Second, the government makes an argument, and I'm glad that we're getting to statutory construction about impari materia, and my response on that would be to look to Barber. In Barber, the same phrase, term of imprisonment, was in the same sentence of the statute, but what the court did in Barber was they looked to the statute's basic purpose, they looked to the statutory objective, and they looked to its context to decide that that phrase had a different meaning in the same sentence. Now, Congress clarified that that was not the correct analysis, but the statutory analysis by Barber completely contradicts the argument that the government has about impari materia. Third, where the Goseland-Peretz has provided clear direction to Congress, that is the only time that we delay the effective date, and that hasn't occurred here. Again, we're looking in Goseland-Peretz to the design of the statute as a whole and its object and policy. Again, these are the types of statutory construction and instructions that we are getting from the Supreme Court that I think guide the statutory argument here in favor of really to be looking at, it makes no sense to look at where the government is admitting. Twelve times they use this subsection, that same phrase, to refer only to subsection G, and then they actually tie this subsection to a risk and needs assessment program that only relates to subsection G. We have a lot of context, we have a lot of policy, and we have a lot of purpose that says this should have been in effect immediately. And on the rational relation test, yes, it's a relatively forgiving standard, but when we're applying a test, we look to what is rational, and that depends partly on what's the interest at stake. We have here people who are sitting in prison for no good reason for weeks and months. There should be at least some articulable reason that connects those two things to articulated need by the agency, and if not, if we're just making it up, what is the connection with a moving target? It's up to 210 days to do the risk and needs assessment. That means that they didn't really care how long it was. It had nothing to do with how long it took to implement the good time credits, which could be done overnight. It only had to do with a program that did take an amount of time, and if it took less time, good, let's put it into effect. But it had nothing to do with good time credits. They've already been able to do many of the calculations. On the 19th, people are going to be out. They should be out right now. Thank you, counsel. The case just argued is submitted, and we very much appreciate the helpful arguments from both of you.
judges: Fernandez, Graber, Owens